IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Robert Graham, | ) | |
| | ) | C/A No. 7:13-1093-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | OPINION & ORDER |
| | ) | |
| | ) | |
| Aetna Life Insurance | ) | |
| Company, Federal Express | ) | |
| Corporation, and Federal Express | ) | |
| Corporation Long Term Disability | ) | |
| Plan, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

("Aetna's") decision to deny Plaintiff Robert Graham's ("Graham") claim for accidental death benefits under an insurance policy which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). The parties have filed a joint stipulation and memoranda in support of judgment pursuant to the court's Specialized Case Management Order for ERISA benefits cases. The parties agree that the court may dispose of this matter consistent with the joint stipulation and memoranda. After a thorough review, the court affirms the denial of benefits.

**I. Facts and Procedural Background**

In this action, Graham seeks review of the denial of long term disability ("LTD") benefits

under Defendant Federal Express Corporations's ("Federal Express") self-funded LTD plan. Graham worked as a permanent, full-time courier for Federal Express from June 7, 1998, until June 13, 2010, when he began to receive short term disability ("STD") benefits for a knee injury which required arthroscopic surgery. He received STD benefits from June 13, 2010, until December 19, 2010. In February 2011, Graham was found disabled by the Social Security Administration with an onset date of June 4, 2010, due to osteoarthritis and allied disorders, secondary to hypertension. (ECF No. 31-2, A.R. 11; ECF No. 31-3 at 11, A.R. 104).

Beginning on December 20, 2010, Graham began to receive LTD benefits. On June 21, 2012, Aetna, the LTD Plan's Claims Paying Administrator (ECF No. 30 at 1 ¶ 5, Joint Stip. ¶ 5), sent Graham a letter indicating it was reviewing his LTD benefits because pursuant to the LTD plan, after 24 months, a claimant must meet the definition of total disability to continue receiving LTD benefits. (ECF No. 31-2 at 84-85, A.R. 85-86). The LTD Plan defines total disability as:

> the complete inability of a Covered Employee, because of a medically-determinable physical or functional impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week.

(ECF No. 31-9 at 42, A.R. 525).

After reviewing the claim and record and submitting the data to an orthopedic surgeon peer physician for review, on November 9, 2012, Aetna determined that there were insufficient findings to support total disability and denied Graham's claim for LTD benefits. (ECF No. 31-2 at 4-5, A.R. 5-6). Graham timely appealed noting that in the denial letter Aetna failed to mention the conclusions of Drs. Depra and W.F. Ward that Graham was disabled, and also referred to two doctors who had not treated him. (ECF No. 31-2 at 6, A.R. 7). Graham also attached updated medical records and evidence that he had been awarded Social Security

disability benefits. (ECF No. 31-2 at 6-30, A.R. 7-31). Graham also submitted a letter listing his current medications. (ECF No. 31-2 at 31, A.R. 32).

On January 4, 2013, after reviewing the claim and record and submitting the data to a second consultant, Aetna denied Graham's claim for LTD benefits on appeal based upon a lack of "significant objective findings" to support a finding of a total disability. (ECF No. 31-1 at 2, A.R. 1).

## II. Medical Evidence

On January 6, 2011, Graham was seen by a Dr. W.F. Ward, a physician at the Dorn Veterans' Hospital. (ECF No. 31-2, A.R. 8). Dr. Ward noted that Graham had a previous disability rating of 40% for lumbar disc disease, and he also had non-service connected injuries connected to his right knee and cervical spine. *Id.* Dr. Ward noted that Graham complained of pain radiating into his right leg with bilateral leg numbness and reported that he could walk about 25 yards without having to stop and rest. (ECF No. 31-2 at 8, A.R. 9). He also reported that his daily activities were affected because of the pain he experienced while walking and that he used a cane and a TENS unit daily. *Id.*

Upon examination, Dr. Ward noted that Graham had limited range of motion in his neck with 50% normal flexion, extension, and rotation. *Id.* He also noted Graham had lumbar spine flexion of 0-55 degrees, extension of 0-10 degrees, lateral flexion 0-20 degrees bilaterally, and rotation 0-20 degrees bilaterally, with pain towards the end point range. *Id.* Dr. Ward also noted muscle spasms and tenderness in the lumbosacral muscles bilaterally, and that Graham's straight leg raise testing was positive bilaterally. (ECF No. 31-2 at 8, A.R. 9). Dr. Ward diagnosed degenerative disc disease of the lumbar spine with sciatic neuropathy bilaterally, more

pronounced on the right, and herniated nucleus pulposus in the lumbar area. (ECF No. 31-2 at 9, A.R. 10).

Dr. Ward opined that due to Graham's veteran's service connected disability, Graham was unable to secure and maintain substantially gainful employment. *Id.* He noted that this was due to Graham's pain and his limitations of lifting, bending, prolonged sitting, standing, walking, and inability to stay in one position very long, as well as the necessity to be seen frequently for pain and his use of medications which would alter mental alertness. *Id.*

On January 22, 2011, Graham was seen by Family Nurse Practitioner ("FNP") Lisa Colasurdo. (ECF No. 31-2 at 46, A.R. 47). Graham complained of low back pain and significant mobility limitation. *Id.* She noted Graham was currently out of work due to knee surgery. *Id.* She also noted that Graham reported that he exercised three times a week. (ECF No. 31-2 at 47, A.R. 48). Upon examination, she noted that, in regard to his back, Graham had full range of motion with pain and that he ambulates with a guarded gait with cane. *Id.*

On February 4, 2011, Dr. Kana completed an attending physician statement for Aetna regarding Graham. (ECF No. 31-2 at 50, A.R. 51). He stated that Graham was doing physical therapy for his knee, and Graham could not yet be released. He restricted Graham as follows: "no squatting, kneeling, or climbing." *Id.*

On February 7, 2011, FNP Colasurdo also completed an attending physician statement for Aetna. She stated that Graham was unable to perform his job duties due to low back pain and restricted him as follows: "no bending at waist, no lifting, pushing, or pulling more than 30 pounds." (ECF No. 31-2 at 51, A.R. 52).

On February 14, 2011, Graham was seen by Physician Assistant Chalmers A. Mills, PA-C. (ECF No. 31-2 at 52-53, A.R. 53-54 ). Mills noted that Graham reported gradually worsening

moderate to severe pain in his lower back, which primarily radiates to his right leg and occasionally to his eft leg and is aggravated by daily activities, movement, bending, twisting, lifting, sitting, standing, walking, and work.  (ECF No. 31-2 at 52, A.R. 53).  Mills also noted that Graham complained of intermittent paresthesias in the bilateral legs. *Id.*  Upon examination, Mills noted  mild tenderness in the mid and lower lumbar spine, positive straight leg raise on the right, and positive FABERE Test on the right.  *Id.*  He was diagnosed with lumbago and lumbosacral neuritis.  *Id.* Upon Graham's request, Mills gave Graham detailed information regarding surgical treatment  options.  *Id.*   Mills also noted that Graham was to remain out of work until a follow up appointment. *Id.*

On April 18, 2011, physicians assistant Timothy Odell, PA-C, stated in a letter that Graham  "has permanent restrictions of no lifting, pushing, or pulling over 30 lbs. No sitting or standing for a prolong period of time. No bending over at the waist." (ECF No. 31-2 at 41, A.R. 42).

On June 10, 2011, Dr. Roger Depra at the Columbia V.A. Medical Center saw Graham who was complaining of low back pain radiating to the back of his right leg down to the knee and further to the calf with prolonged sitting.  (ECF No. 31-2 at 64, A.R. 65)  Dr. Depra noted that Graham had been released from physical therapy, failed a trial with an epidural steroid injection, and had opted against surgery or implanting a stimulator for the time being.  *Id.* Dr. Depra noted that Graham reported being depressed about his back and being out of work.  He also reported right side headaches radiating to his forehead since December, which caused photosensitivity and interference with activities of daily living when severe.  (ECF No. 31-2 at 64, A.R.  65).  Dr. Depra diagnosed Graham with lumbar radiculopathy/chronic lower back pain, depression (suboptimal control), migraine headaches, and hypertension. (ECF No. 31-2 at 65-66, A.R. 66-67)

5

On July 21, 2011, Dr. Phillip Esce, a neurosurgeon, completed an "Evaluation of Physical Abilities" form regarding Graham. (ECF No. 31-2 at 55, A.R. 56). Dr. Esce opined that Graham was at full capacity for carrying less than ten pounds, his vision, depth perception, hearing, and speaking. *Id.* Dr. Esce opined that Graham could sit, stand or walk, and handle finger precision work for more than four hours. *Id.* Dr. Esce opined that Graham could drive; bend, twist, or stoop; operate foot controls; push or pull; and reach above shoulder less than four hours; and that he was unable to squat, kneel, or crawl; climb; and carry more than 10 pounds. *Id.*

On August 1, 2011, Dr. Depra wrote a letter stating that he was treating Graham for a lumbar radiculopathy to the right in the distribution of L5. (ECF No. 31-2 at 68, A.R. 69). He also noted that Graham was being treated for depression regarding his medical conditions and inability to work due to chronic pain. *Id.*

On December 16, 2011, Dr. Depra saw Graham again complaining of low back pain radiating to the back of the right leg down to the knee and radiating to the right calf with prolonged sitting. (ECF No. 31-2 at 61, A.R. 62). Dr. Depra noted that Graham reported being depressed about his back and not being able to work full-time. *Id.* Dr. Depra also noted that Graham reported that counseling was helpful and he had noticed an improvement in his mood. *Id.* He also noted that Graham reported that he had a friend who owns a gym and that he was thinking about working out again. *Id.* Dr. Depra diagnosed Graham with stable lumbar, radiculopathy, chronic lower back pain, depression - improved, hypertension, anemia, and hearing loss. (ECF No. 31-2 at 63, A.R. 64).

On January 13, 2012, Dr. Depra completed a physician report form for Aetna in which he noted that Graham had positive straight leg raising and a decreased range of motion. (ECF No.

6

31-2 at 78, A.R. 79). Dr. Depra opined that Graham was unable to work his prior job at Federal Express, but may be able to perform sedentary work that does not require prolonged periods of sitting. *Id.* However, on February 17, 2012, Dr. Depra wrote a letter in which he stated that "[a]fter reviewing [Graham's] VA disability records and social security disability records, I am amending my previous statement regarding his ability to work. Due to his medical conditions he is NOT able to work at any compensable employment for a minimum of 25 hours per week." (ECF No. 31-2 at 12, A.R. 13).

On February 4, 2012, Graham was seen by FNP Colasurdo for a follow up visit. (ECF No. 31-2 at 79-80, A.R. 80-81). Colasurdo noted that Graham complained of chronic low back pain. (ECF No. 31-2 at 79, A.R. 80). She noted that Graham had free range of motion of his back without pain. *Id.* However, on November 21, 2012, an addendum was added noting that "[i]t was documented in error that Mr. Graham has [free range of motion] of back without pain. He has chronic back pain which limits [range of motion] and he does have pain with [range of motion] of his back." (ECF No. 31-2 at 29, A.R. 30).

On June 20, 2012, Graham was seen by Dr. William L. Brannon at the Dorn Veteran's Hospital for a compensation and pension examination. (ECF No. 31-2 at 13, A.R. 14). Dr. Brannon noted that Graham reported moderate, constant pain which could be excruciating at times in the right lower leg and moderate numbness in both legs. (ECF No. 31-2 at , A.R.). Dr. Brannon noted that Graham had an abnormal normal gait which Dr. Brannon described as antalgic. (ECF No. 31-2 at 17, A.R. 18). Dr. Brannon stated that Graham's "chronic pain essentially precludes employment." (ECF No. 31-2 at 25, A.R. 26). Dr. Brannon diagnosed Graham with a peripheral nerve condition - lumbago. *Id.* He noted that this was the best diagnosis to explain Graham's back and leg pain. *Id.* Further, Dr. Brannon stated that Graham's right sciatic nerve was impaired to a moderate degree by the degenerative disc disease the

7

lumbar spine. *Id*.

On June 25, 2012, Dr. Depra saw Graham who was complaining of lower back pain radiating to the back of the right leg down to the knee and the pain radiated to the right calf with prolonged sitting. Dr. Depra noted that Graham had been released from physical therapy, epidural steroid injections had failed in the past, and Graham had opted against surgery for now. He also noted that Graham reported being depressed about his back and being out of work. (ECF No. 31-2 at 57, A.R. 58). Dr. Depra diagnosed Graham with degenerative disc disease, lumbar radiculopathy, chronic lower back pain, depression, hypertension, anemia, tinnitus, and hearing loss. (ECF No. 31-2 at 59, A.R. 60). Dr. Depra also noted that on July 19, 2012, he had completed a disability form for Aetna in which he opined that Graham was not able to work at any compensable employment for a minimum of 25 hours a week. (ECF No. 31-2 at 60, 67, A.R. 61, 68).

On October 22, 2012, Dr. Esce completed a form in which he stated that Graham was taking diclofenac once per day but that the medication would not interfere with his ability to drive a commercial motor vehicle. (ECF No. 31-2 at 82, A.R. 83).

On October 23, 2012, Dr. Lawrence Blumberg, an orthopedic surgeon hired by Aetna as a consultant, opined that Graham "does not have an impairment that would preclude him from engaging in any compensable employment for a minimum of 25 hours per week." (ECF No. 31-2 at 89, A.R. 90). Dr. Blumberg stated that he based his opinion upon the lack of physical examination findings to support impairment in the medical records. (ECF No. 31-2 at 88, A.R. 89).

On December 1, 2012, Dr. Depra again wrote a letter regarding Graham's disability, stating that "[b]ased on his history, physical examination, and previous medical

records/disability determination [Graham] is unable to secure and maintain substantially gainful employment due to degenerative disc disease of the lumbar spine and lumbar radiculopathy." (ECF No. 31-2 at 27, A.R. 28).  On January 6, 2011, Dr. Ward opined that due to Graham's veteran's service connected disability, Graham was unable to secure and maintain substantially gainful employment.  (ECF No. 31-2 at 9, A.R. 10).

On December 18, 2012, Dr. Robert Cirincione, an orthopedic surgeon hired as another consultant by Aetna, reviewed the medical records and opined that Graham "could perform a paid occupation for a minimum of 25 hour per week from December 20, 2012, through the present time based on the documents that I have reviewed and the medical records did indicate the presence of degenerative disk disease with no neurologic deficits." (ECF No. 31-3 at 1-4, A.R. 93-97).

### III.  Standard of Review

A court reviews a denial of benefits under 29 U.S.C. § 1132(a) (1)(B) "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where "an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629-30 (4th Cir. 2010).  Here, the Plan vests discretionary authority  to make benefit determinations in the Claims Administrator, Aetna.  Accordingly, the parties have stipulated (ECF No. 30 at 1  ¶ 11, Joint Stip. ¶ 11), and the court agrees, that this court should apply an abuse of discretion standard in reviewing Aetna's decision to deny

Plaintiff's claim.

Under the abuse of discretion standard, the court we will not disturb a plan administrator's decision if the decision is reasonable, even if the court would have come to a contrary conclusion independently. *Metropolitan Life Ins. Co. v. Glenn*, 544 U.S. 105 (2008). An administrator's decision is reasonable if it was the result of a "deliberate, principled reasoning process" and is supported by substantial evidence. *See also Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322-23 (4th Cir. 2008).

In assessing reasonableness, the Court is guided by eight nonexclusive factors:

(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000). "All eight Booth factors need not be," and may not be, "in play" in a given case. *Helton v. AT & T, Inc.*, 709 F.3d 343, 357 (4th Cir. 2013). In general, a reviewing court should not find an abuse of discretion where the plan administrator's decision is reasonable, "even if the court itself would have reached a different conclusion." *Booth*, 201 F.3d at 340. A plan administrator's decision is reasonable as long as the denial of benefits results from "a deliberate, principled reasoning process" and "is supported by substantial evidence." *Williams*, 609 F.3d at 630. Substantial evidence, which "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance," is evidence that "a reasoning mind would accept as sufficient to support a particular conclusion." *Whitley v. Hartford Life & Accident Ins. Co.*, 262

F. App'x 546, 551 (4th Cir. 2008) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)) (internal quotation marks omitted).

## IV. Discussion

Graham contends that Aetna failed to consider certain medical records from Drs. Depra, Brannon, Ward and Esce, and FNP Colasurdo. Additionally, Graham contends that Aetna failed to give any weight to the opinions of Graham's treating physicians, Drs. Depra, Ward, and Brannon, that Graham is unable to work, while giving great weight to the opinions of non-treating physician consultants. Aetna contends it properly considered all the evidence and its denial was the result of deliberate and principled reasoning supported by substantial evidence.

First, Graham contends that Aetna failed to consider some medical records from Drs. Depra, Brannon, Ward, and Esce, and FNP Colasurdo when it determined that there were no significant objective findings to substantiate Graham's disability. Graham claims that a failure to consider this evidence is an abuse of discretion citing *Donovan v. Eaton Corp*., 462 F.3d 321 (4th Cir. 2006), and *White v. Easton Corp. Long Term Disability Plan*, 308 Fed.Appx. 713, 719 (4th Cir. 2009). However, in both of these cases, the plan administrator was found to have abused his discretion in denying benefits because, while the decision may have been supported by evidence in the record, opposing evidence which favored granting benefits was not considered. While the court agrees that failure to consider the entire record would be an abuse of discretion, the court does not find that Aetna failed to do so here.

"[I]t is not an abuse of discretion for a plan fiduciary to deny disability pension benefits where conflicting medical reports were presented." *Elliot v. Sara Lee Corp.*, 190 F.3d 601, 606 (4th Cir. 1999); *see also Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 233-34 (4th Cir. 1997)

(holding that when there were three separate independent reports conflicting with treating physician's conclusion, there is "a substantial basis on which an objectively reasonable decision maker could determine that [claimant] was not disabled within the terms of the Plan."). "[A] decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id.* at 232 (quotation omitted).  Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and that which "a reasoning mind would accept as sufficient to support a particular conclusion."  *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984) (quotations omitted).  A reviewing court must assess the reasonableness of the administrator's decision based on the facts known to the administrator at the time of the decision. *See, e.g., Elliott*, 190 F.3d at 608-09.  Here, the court finds that based upon the conflicting evidence, it was not an abuse of discretion for Aetna to deny Graham LTD benefits.

Additionally, Graham contends that Aetna failed to give any weight to the opinions of Graham's treating physicians, Drs. Depra, Ward, and Brannon. Graham argues that these opinions may be more persuasive that those offered by a reviewer of a paper record, and these opinions were supported by objective medical findings noted in the record.  The court disagrees.

In *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), the Supreme Court held the administrators of plans covered by ERISA "are not obligated to accord special deference to the opinions of treating physicians."  538 U.S. at 825.  While the Supreme Court indicated that plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence," the Court also stated that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." 538 U.S. at 834. "[T]he assumption that the opinions of a treating

physician warrant greater credit than the opinions of plan consultants may make scant sense when, for example . . . a specialist engaged by the plan has expertise the treating physician lacks." *Id*.

Here, the court finds that Aetna did not ignore evidence from Graham's treating physicians. Rather, it simply relied on the opinions of physicians who disagreed. As noted above, it is not an abuse of discretion to deny benefits when conflicting medical reports exist. The absence of explanation alone does not show an abuse of discretion; however, the Plan "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker*, 538 at 834. Although the record contains conflicting evidence about Graham's conditions, Aetna's decision making process appears reasoned and principled, and its decision to deny Graham benefits under the LTD plan is supported by substantial evidence.

Graham also agues that Aetna gave great weight to its consultant's opinions, which Graham contends were flawed. First, Graham notes that in his review, Dr. Blumberg referenced office notes from a Dr. Toole, and Graham has never been treated by a Dr. Toole. Clearly, this was in error. However, Dr. Blumberg does not appear to have relied upon these records as he listed the most relevant records in the clinical file review section of his physician review form. (ECF No. 31-2 at 87, A.R. 88), and there are no references to Dr. Toole.

As for the second Aetna consultant, Dr. Cirincione, Graham contends that he did not consider a progress note from FNP Colasurdo from February 2012, noting Graham had chronic back pain with limited range of motion. Graham, however, is mistaken.

As noted above, on February 4, 2012, Graham was seen by FNP Colasurdo who noted that Graham had free range of motion of his back without pain. (ECF No. 31-2 at 79-80, A.R.

13

80-81).  However, on November 21, 2012, an addendum was added noting that "[i]t was documented in error that Mr. Graham has [free range of motion] of back without pain.  He has chronic back pain which limits [range of motion] and he does have pain with [range of motion] of his back."  (ECF No. 31-2 at 29, A.R. 30).  Graham included the amended note when he appealed and Graham contends that this is a significant objective finding overlooked by Dr. Circincione.  However, in his review dated December 16, 2012, Dr. Circincione specifically noted that Graham was seen by FNP Colasurdo on February 4, 2012, and that she noted Graham "had chronic pain with limitation of motion of the spine."  (ECF No. 31-3 at 2, A.R. 95).

Finally, Graham contends that while an award of social security disability benefits is not determinative, Aetna should have considered it in making its disability decision.  The court notes that unlike in Social Security cases, "ERISA does not impose a treating physician rule, under which a plan must credit the conclusions of those who examined or treated a patient over the conclusions of those who did not."  *White v. Sun Life Assurance Co. of Canada*, 488 F.3d 240, 254 (4th Cir. 2007).  However, to deny benefits under ERISA, an administrator must present grounds that "a reasoning mind would accept as sufficient" to supports its decision. *Id.* (internal citations omitted).  Rather, "ERISA . . . require[s] that in order to deny benefits, an insurer must present a basis a reasoning mind would accept as sufficient to support its decision."  *Id*. (internal quotation marks omitted).

In any event, the court recognizes that "a disability determination by [a different decisionmaker may be] relevant in an action to determine the arbitrariness of a decision to terminate benefits under an ERISA plan." *Glenn v. MetLife*, 461 F.3d 660, 667 (6th Cir. 2006).  However, Graham does not offer any evidence that the LTD Plan's definition of "Totally Disabled" mirrors the relevant definition under the regulations of the Social Security Administration. *See, e.g., Smith v. Continental Cas. Co.*, 369 F.3d 412, 420 (4th Cir. 2004)

("[W]hat qualifies as a disability for social security disability purposes does not necessarily qualify as a disability for purposes of an ERISA benefit plan - the benefits provided depend entirely on the language in the plan.").[1]  Accordingly, Aetna had no obligation to weigh the Social Security Administration's disability determination more favorably than other evidence. *See Gallagher v. Reliance Std. Life Ins. Co.*, 305 F.3d 264, 275 (4th Cir.2002). Moreover, "even in the face of an [agency's] determination of disability, a plan administrator is entitled to make his own independent judgment." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir. 1999).

Here, there is nothing in the record which establishes what evidence the Social Security Administration relied upon in determining Graham's disability under the Social Security Act. The only information regarding the Social Security Administration's disability determination is that in February 2011, Graham was found disabled by the Social Security Administration with an onset date of June 4, 2010, due to osteoarthritis and allied disorders, secondary to hypertension. (ECF No. 31-2, A.R. 11; ECF No. 31-3 at 11, A.R. 104).  Lacking more information, Aetna could not fairly be required to give greater explanation for how its decision differed from the Social Security Administration's disability determination.

---

[1] Under the Social Security Administration's regulations, disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). As set out earlier, the LTD Plan defines total disability as:

> the complete inability of a Covered Employee, because of a medically-determinable physical or functional impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week.

(ECF No. 31-9 at 42, A.R. 525).  The LTD Plan requires the complete inability to engage in any compensable employment and excludes mental conditions.

## V. Conclusion

For the foregoing reasons, judgment is granted to Defendants and the denial of benefits is **AFFIRMED**.

    **IT IS SO ORDERED.**

                                          s/Timothy M. Cain
                                          United States District Judge

September 22, 2014
Anderson, South Carolina